US DISTRICT COURT
WESTERN DIST ARKANSAS
**FILED**
10/02/2024

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA          )
                                  )
v.                                )          Case No. 4:24-CR-40001-001
                                  )
EUGENE SPENCER COX                )
          a/k/a "Spence"

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered negotiations which have resulted in this Agreement. The Agreement of the parties is as follows:

### COUNTS OF CONVICTION AND DISMISSAL

1. The Defendant, EUGENE SPENCER COX, a/k/a "Spence", agrees to plead guilty to Count Two of the Indictment, which charges that, on or about October 10, 2023, in the Western District of Arkansas, Texarkana Division, he, along with his co-defendant, Daniel Eliud Ruiz-Magdaleno, knowingly and intentionally possessed a controlled substance, namely, more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, with intent to distribute that controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii). If the Court accepts this plea agreement, and after the Court has pronounced sentence on Count Two, the United States agrees to move to dismiss Counts One and Three of the Indictment, as they pertain to the Defendant.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

2. The Defendant, EUGENE SPENCER COX, a/k/a "Spence" (hereinafter "Cox"), has fully discussed with his attorney the facts of this case and the elements of the crime to which he is pleading guilty. Cox has committed each of the elements of the crime to which he is pleading guilty

and admits that there is a factual basis for his plea of guilty to Count Two of the Indictment.  Cox

hereby admits and stipulates that the following facts are true:

a.  On October 10, 2023, Arkansas State Police (ASP) Cpl. Bernard Pettit was on eastbound Interstate 30 in his ASP patrol vehicle, near Exit 7 in Miller County, Arkansas, in the Western District of Arkansas. While observing eastbound traffic on I-30, Cpl. Pettit saw a silver Nissan Altima following the vehicle in front of it more closely than he knew from his training and experience was reasonable and prudent under the circumstances, in violation of Ark. Code Ann. § 27-51-305.  Cpl. Pettit caught up to the silver Altima as it left Interstate 30 at Exit 7.  Cpl. Pettit then initiated his emergency lights, and the Altima came to a stop along the exit ramp.

b.  Cpl. Pettit approached the silver Altima on its passenger side, and contacted its driver and sole occupant, Mark T. Oliver (hereinafter "Oliver").  Cpl. Pettit advised Oliver that he had been stopped because he was following the vehicle in front of him too closely.  Oliver replied "Was I?", and suggested he might have been distracted by using a smartphone app to look for a rest area.  Oliver provided Cpl. Pettit a Georgia driver's license.

c.  Oliver told Cpl. Pettit that he was driving to Indianapolis, Indiana, from Houston, Texas, but was an Atlanta, Georgia, resident.  Oliver provided Cpl. Pettit documentation showing that he had rented the Altima in Georgia only the day before.  Oliver said that, after renting the Altima, he had driven it to Houston, and was now on his way to Indianapolis, before returning to Georgia.

d.  After running the standard law enforcement checks on Oliver and the Altima, Cpl. Pettit asked Oliver if there was anything in the vehicle's trunk.  Oliver said there was not.  Cpl. Pettit then requested Oliver's consent to search the Altima's trunk, and Oliver granted it.  Oliver then gave Cpl. Pettit the Altima's key fob, with which to open the trunk.

e.  Inside the trunk, Cpl. Pettit found a duffel bag containing 14 separate packages, each weighing approximately 1 kilogram.  From his training and experience, Cpl. Pettit recognized these packages as so-called "bricks" of a controlled substance.  Cpl. Pettit arrested Oliver, advised him of his *Miranda* Rights, and seized the 14 bricks.  A sample of the substance in one of the bricks was later 'field-tested' and reacted presumptively positive for the presence of cocaine, a Schedule II controlled substance.

f.  Oliver told a Homeland Security Investigations (HSI) agent who came to the scene of the stop that he had been travelling in tandem with another rental vehicle—a newer model white Ford Mustang with a black convertible top. Oliver said there were two men in the Mustang—one black and one Hispanic— who had been traveling ahead of him and giving him advance warning of any

police presence. Oliver said the black male driving the Mustang was "Spencer", but that he did not know the Hispanic male's name. Oliver said the men in the Mustang had warned him of Cpl. Pettit's patrol vehicle, before telling him they were stopping at the gas station at Exit 7. Oliver's description of the Mustang and its two male occupants was relayed to other ASP Troopers working on Interstate 30.

g. Oliver told investigators he had been transporting the duffel bag from Houston, Texas, to Indianapolis, Indiana, at Spencer's request. He said he expected to be paid $5,000 for doing so. Oliver said he had never looked inside the duffel bag, but thought it contained either marijuana or cocaine. Oliver said he had arrived at the Hotel Indigo, in Houston, Texas, on the morning of October 10, 2023, where he found Spencer and a Hispanic male waiting for him in the parking lot. Oliver said Spencer then placed the duffel bag in the trunk of Oliver's rental car. Oliver said he was told to follow Spencer and the Hispanic male, who would be in the white Mustang, but to travel a few minutes behind them. During the trip, Oliver said, he communicated with Spencer via the "Telegram" app on his cell phone. Corroborating this, investigators saw Telegram messages on Oliver's cell phone from a person named "Spence". In the messages, "Spence" sent Oliver the address of the Houston, Texas, Hotel Indigo, and later warned Oliver where police vehicles were located.

h. While Oliver was being questioned, ASP Trooper Dustin Arnold located a white Ford Mustang with a black convertible top traveling east on Interstate 30 near Arkadelphia, in Clark County, Arkansas. Trooper Arnold stopped the white Mustang for a violation of Ark. Code Ann. § 27-51-305. The black male driver of the vehicle was identified by his Georgia driver's license as the Defendant, Cox. The Hispanic male passenger was identified by his Georgia driver's license as the co-defendant, Daniel Eliud Ruiz-Magdaleno (hereinafter "Ruiz"). Cox and Ruiz matched the descriptions Oliver had given for the men he had been transporting the cocaine with. Cox also corroborated that the white Mustang he and Ruiz were traveling in was a rental car.

i. Trooper Arnold had Cox step out of the vehicle before asking where he and Ruiz were traveling from. Cox said they were coming from Houston, Texas. Trooper Arnold then asked where Cox and Ruiz were going. The men replied that a 'situation' had arisen, and that they had decided to 'go back home'. Cox told Trooper Arnold that he and Ruiz were now driving to the Little Rock airport, to catch a flight home to Atlanta, Georgia. When Trooper Arnold asked what kind of situation had arisen, Cox said it was 'private'.

j. Trooper Arnold then inquired of Ruiz separately about his travel with Cox. Ruiz said he and Cox had initially planned to drive the Mustang from Houston to Atlanta but had later decided to 'just take the airport'. Trooper Arnold then asked Ruiz why the men would drive through Arkansas if they were traveling from Texas to Georgia. Ruiz said that he had family in Memphis. When

Trooper Arnold asked if Ruiz was planning on going to Memphis, Ruiz replied, 'Um . . . not really. It was just this way'.

k.  Trooper Arnold then requested and received Cox's consent to search the rental Mustang. No drugs or other contraband were found in it, and Cox and Ruiz were released.

l.  The 14 bricks of suspected cocaine found in Oliver's rental car were later taken to the Arkansas State Crime Laboratory for chemical analysis. A forensic chemist of that laboratory has since reported that 6 of the 14 bricks hold white, powdery substances containing cocaine. The white, powdery substances in the remaining 8 bricks have not yet been analyzed but appear the same as the substances in the 6 tested bricks. The chemist further reported that the aggregate weight of the white, powdery substances containing cocaine from the 6 tested bricks is at least 6,020.3 grams (a little more than 6 kilograms). Cocaine is a Schedule II controlled substance under federal law. Although the chemist weighed the 8 untested bricks *with* their packaging, the aggregate weight of the substances from the 6 tested bricks (which were weighed *without* their packaging) indicates that the total weight of the substances from all 14 bricks is approximately 14,047.3 grams (slightly over 14 kilograms).

m.  Guest records obtained by HSI show that Ruiz rented a room at the Houston, Texas, Hotel Indigo from October 9 to October 10, 2024. The hotel's security video shows Ruiz entering on October 9, carrying a duffel bag like the one later found in Oliver's trunk. Later the same day, Cox is seen entering the hotel, after which he and Ruiz leave and return together. Shortly before 8:00 AM on October 10, Ruiz is seen carrying the same duffel bag out of the hotel and then returning without it. About 90 minutes later, Cox and Ruiz are seen walking out of the hotel within roughly a minute of each other.

n.  On February 9, 2024, following Cox and Ruiz's indictment in this matter, HSI investigators executed a search warrant at an apartment in Atlanta, Georgia. Inside the apartment, investigators found evidence indicating it was occupied by both Cox and Ruiz, including Ruiz's Mexican passport and a wallet containing cards bearing Cox's name. They also found and seized multiple firearms, a drug transaction ledger, and substances that field-tested positive for cocaine and heroin (also a controlled substance under federal law). The results of laboratory analyses of those substances have not yet been received.

o.  In consideration of the foregoing, the Government can prove beyond a reasonable doubt, and Cox hereby admits and stipulates, that, on or about October 10, 2023, in the Western District of Arkansas, Texarkana Division, he, along with his co-defendant, Daniel Eliud Ruiz-Magdaleno, knowingly and intentionally possessed a controlled substance, namely, more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, with intent to distribute that controlled substance, in

Plea Agreement – U.S. v. Cox (4:24-CR-40001-001) – Page 4 of 14

violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

## ADVICE OF RIGHTS

3.   The Defendant hereby acknowledges that he has been advised of his constitutional and statutory rights.  Further, the Defendant agrees that he fully understands his rights:

    a.   to have an attorney and, if he cannot afford an attorney, to have one provided for him and paid for at the United States' expense;

    b.   to persist in his plea of not guilty;

    c.   to have a speedy and public trial by jury;

    d.   to be presumed innocent until proven guilty beyond a reasonable doubt;

    e.   to confront and examine witnesses who testify against him;

    f.   to call witnesses on his own behalf;

    g.   to choose to testify, or not testify, and that no one could force him to testify; and

    h.   to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4.   The Defendant hereby acknowledges and agrees that, by pleading guilty to Count Two of the Indictment, he thereby WAIVES all of the rights listed in (b) through (h) of the above paragraph as to that count.

## WAIVER OF ACCESS TO RECORDS

5.   The Defendant hereby waives all rights, whether asserted directly or by a third-party or representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**WAIVER OF "HYDE" CLAIM**

6.    The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. §

3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the

investigation or prosecution of this matter.

**EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT**

7.    The Defendant agrees that if, after signing this Plea Agreement, he commits any crimes,

violates any condition of release, fails to appear for any hearing or proceeding in this matter,

provides intentionally misleading, incomplete, or untruthful information to the Probation Office or

the Court, violates or otherwise fails to comply with any term of this Plea Agreement, takes a

position at sentencing which is contrary to the terms of this Plea Agreement, or attempts to withdraw

from this Plea Agreement, such shall constitute a breach of this Plea Agreement by him.    The

Defendant further agrees that any breach of this Plea Agreement by him shall release the United

States from all restrictions and obligations placed upon it hereunder and shall free the United States

to reinstate any dismissed charges, or to pursue additional charges against him.    However, in the

event of any such breach by the Defendant, the Defendant agrees that he shall nonetheless remain

bound by the terms of this Plea Agreement and shall not be allowed to withdraw this plea of guilty,

unless permitted to do so by the Court.

8.    The Defendant agrees that a breach of any provision of this Plea Agreement by him shall

operate as a WAIVER of his rights under Rule 11(f) of the Federal Rules of Criminal Procedure and

Rule 410 of the Federal Rules of Evidence.    The Defendant also agrees that, in the event of any

breach of this Plea Agreement by him, the United States shall be allowed to use, and to introduce

into evidence at any trial or hearing in this matter, any one or more of the following:

        a.    admissions against interest, both oral and written, made by Defendant to any
            person;

b.  statements made by the Defendant during his change of plea hearing;

c.  the factual basis set forth in this Plea Agreement, and the fact of the Defendant's stipulation to, and admission of, that factual basis, as set forth herein;

d.  any testimony given under oath to a grand jury or petit jury;

e.  any and all physical evidence of any kind which the Defendant has provided to the United States; and

f.  any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## STIPULATION ON DRUG QUANTITY

9.  The United States and the Defendant agree that the most readily provable amount of drugs for which the Defendant should be held accountable is more than 5 kilograms, but less than 15 kilograms, of cocaine.  The parties further agree that this stipulated drug quantity results in a gross base offense level of 30, under U.S.S.G. § 2D1.1(c)(5).

10.  Should the Court find the Defendant qualifies as a Career Offender pursuant to U.S.S.G. § 4B1.1, the Defendant nonetheless acknowledges that his gross base offense level will be adjusted accordingly.

## MINIMUM AND MAXIMUM PENALTIES

11.  The Defendant hereby acknowledges that he has been advised of the minimum and maximum penalties for the crime to which he is pleading guilty.  By entering a plea of guilty to Count Two of the Indictment, the Defendant agrees that he faces:

a.  a mandatory minimum term of imprisonment for 10 years;

b.  a maximum term of imprisonment for life;

c.  a maximum fine of $10,000,000;

d.  both imprisonment and fine;

e.  a term of supervised release which begins after release from prison;

f.  a possibility of going back to prison if the Defendant violates the conditions of supervised release; and

g.  a special assessment of $100.00.

## CONDITIONS OF SUPERVISED RELEASE

12.  The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

a.  The defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment unless the probation officer instructs the defendant to report to a different probation office or within a different timeframe.

b.  After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

c.  The defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.

d.  The defendant shall answer truthfully the questions asked by the probation officer.

e.  The defendant shall live at a place approved by the probation officer. If the defendant plans to change where he lives or anything about his living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

f.  The defendant shall allow the probation officer to visit the defendant at any time at his home or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

g.  The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment, he shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about his work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

h.  The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i.  If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.

j.  The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k.  The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

l.  If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

m.  The defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## PAYMENT OF MONETARY PENALTIES

13. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be: (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c; and (ii), submitted to the Treasury Offset Program so that any federal payment

such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

14. The United States agrees that no other federal charges arising from the conduct described in the factual basis set forth above will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

15. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

16. The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater that the parties expected, the Defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

17. At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to Defendant's background, character and conduct, including any conduct that is the subject of this investigation for which he has not been charged up to the date of the Agreement, and/or (if

applicable) any conduct which is the basis for any count(s) to be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

18. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

19. The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following: a) falsely denying, or making a statement materially inconsistent with, the factual basis set forth in this agreement, b) falsely denying additional relevant conduct in the offense, c) being untruthful with the United States, the Court, or probation officer, or d) materially breaching this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

20. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the rights to:

    a.  make all facts known to the Probation Office and to the Court;

b. call witnesses and introduce evidence in support of the Presentence Report;

c. contest and appeal any finding of fact or application of the Sentencing Guidelines;

d. contest and appeal any departure from the appropriate Guideline range; and

e. defend all rulings of the District Court on appeal, including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

21. The United States' concessions on sentencing options are non-binding and made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact, or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## DISMISSAL OF COUNTS

22. The United States' agreement to dismiss Counts One and Three of the Indictment, as they pertain to the Defendant, is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the United States' motion to dismiss Counts One and Three as to the Defendant, then the Defendant shall be afforded the right to withdraw his plea of guilty to Count Two, should he choose to do so, pursuant to Rule 11(c)(5)(B).

## AGREEMENT NOT BINDING ON THE COURT

23. The parties agree that nothing in this Agreement binds the District Court to:

a. make any specific finding of fact;

b. make any particular application of the Sentencing Guidelines;

c. hand down any specific sentence;

d. accept any stipulation of the parties as contained in this Plea Agreement; and

e. accept this Plea Agreement.

24. The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

25. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESMENT

26. The Defendant agrees that he will pay $100.00 as the special assessment in this case.

## REPRESENTATIONS BY THE DEFENDANT

27. By signing this Plea Agreement, the Defendant acknowledges that:

    a. The Defendant has read this Plea Agreement (or has had it read to him) and has carefully reviewed every part of it with defense counsel.

    b. The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.

    c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.

    d. The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.

    e. The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

28. By signing this Plea Agreement, Counsel for the Defendant acknowledges that:

    a. Counsel has carefully reviewed every part of this Agreement with the Defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.

b.   Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.

c.   Counsel believes the Defendant's decision to enter into this Agreement is an informed and voluntary one.

**PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT**

29.   The Defendant and his attorney each acknowledge that this Plea Agreement constitutes the entire agreement of the parties.  Further, the parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this ___4th___ day of _____September_____, 20_24___.

_____
EUGENE SPENCER COX
Defendant

_____
ALEX WYNN
Attorney for Defendant

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By: _____
Graham Jones
Assistant United States Attorney

Digitally signed by
GRAHAM JONES
Date: 2024.09.04
10:02:36 -05'00'

Plea Agreement – U.S. v. Cox (4:24-CR-40001-001) – Page 14 of 14