IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA,

       PLAINTIFF

VS.                    CASE NO. 4:24-CR-40001

EUGENE SPENCER COX,

       DEFENDANT


TRANSCRIPT OF PROCEEDINGS
CHANGE OF PLEA HEARING
BEFORE THE HONORABLE SUSAN O. HICKEY
ON OCTOBER 2, 2024
TEXARKANA, ARKANSAS


FOR THE PLAINTIFF:

      MR. GRAHAM JONES
      ASSISTANT U.S. ATTORNEY
      U.S. ATTORNEY'S OFFICE


FOR THE DEFENDANT:

      MR. ALEX WYNN
      ASSISTANT FEDERAL PUBLIC DEFENDER
      U.S. FEDERAL PUBLIC DEFENDER'S OFFICE


Proceedings recorded by voice stenography,
transcript produced by computer.


JODI T. WADE
FEDERAL OFFICIAL COURT REPORTER
100 RESERVE STREET, RM 347
HOT SPRINGS, AR 71913

P R O C E E D I N G S

[Proceedings commencing in open court at 8:33 a.m.]

THE COURT:  Good morning, ladies and gentlemen.  We are in the United States District Court for the Western District of Arkansas, Texarkana Division.

We are here on criminal case number 4:24-cr-40001-001, *The United States of America versus Eugene Spencer Cox*.  How are you today, Mr. Cox?

THE DEFENDANT:  I'm fine, ma'am.  Thank you for asking.

THE COURT:  Good.  Mr. Cox, today is a very important day.  You are here to change your plea, and I want you to understand everything that is going on.  If you do not understand something, please tell your attorney, Mr. Wynn.  We will stop, take a break, he will be able to explain things to you, then we'll go back into session, okay?

THE DEFENDANT:  All right.

THE COURT:  Okay.  Let the record reflect that the defendant, Mr. Eugene Spencer Cox, is in court today along with his attorney, Mr. Alex Wynn.

Appearing on behalf of the United States government is Assistant U.S. Attorney Mr. Graham

Jones.  Is the government ready to proceed?

MR. JONES:  Yes, Your Honor.

THE COURT:  Is the defense ready to proceed?

MR. WYNN:  We are, Your Honor.

THE COURT:  Okay.  Now, Mr. Cox, the first thing that I am going to do this morning is I am going to go over the events that led us here today. If I misspeak, please let me know, and I will correct it.

On January 18th, 2024, a grand jury in and for the United States District Court for the Western District of Arkansas, Texarkana Division, filed a three count indictment against you and one other individual.  In that indictment, counts one, two and three pertain to you.

I am only going to go over count two of this indictment because it is my understanding that if you change your plea today from not guilty to guilty as to count two, it is the intention of the United States government to move to dismiss counts one and three at sentencing.

Mr. Jones, is that correct?

MR. JONES:  That's correct, Your Honor.

THE COURT:  Okay.  So, Mr. Cox, what I'm

going to do is I'm going to go over count two and the statutory penalty for this count.

Count two reads:  On or about October 10th, 2023, in the Western District of Arkansas, Texarkana Division, the defendant, Eugene Spencer Cox, a.k.a. Spence, and Daniel Ruiz-Magdaleno did knowingly and intentionally possess a controlled substance, namely more than five kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, with the intent to distribute that controlled substance all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(a)(2).

The penalty for this, the statutory penalty, is not less than 10 years and not more than life imprisonment, not more than a $10 million fine or both.  If you are sentenced to a term of confinement, then a term of supervised release may also be part of this sentence.

If after you're released from confinement if you violate a term of your supervised release, then an additional term of confinement can be imposed upon you.

If you have a prior conviction for a felony drug offense and the government files an

information prior to a guilty plea or a trial on this matter, this penalty can increase.  There is also a $100 special assessment that is owed to the government.

Now, this is the charge that you've indicated that you're going to change your plea on and the statutory penalty.  Do you understand both of those?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  On January 18th, 2024, a warrant was issued for your arrest.  On February 9th, 2024, you were arrested on the warrant in the Northern District of Georgia.

On February 14th, 2024, you appeared before a magistrate judge in that district for your Rule 5 hearing at which time you were transferred to this district.

On March 13th, 2024, you filed a waiver waiving your right to personally appear in court and consented to conducting court proceedings by videoconference.  On that same day, you appeared before Magistrate Judge Barry Bryant for your arraignment and plea to the indictment.

You appeared without counsel and executed an affidavit that you had insufficient funds to hire

an attorney.  At that point in time, Judge Bryant appointed Mr. Alex Wynn to represent you.

Judge Bryant informed you of your rights, the maximum possible penalty and the payment of the special assessment.  You waived the reading of the indictment; however, the substance of the charges were related to you.

You were informed that the charges were felonies.  You waived your right to a detention hearing but reserved the right to revisit the issue of detention at a later date.

You entered a plea of not guilty to the charges.  Trial was scheduled for April 15th, 2024, and you were remanded to the custody of the United States marshal pending trial.

Then on March 20th, 2024, you filed a motion to continue.  That motion was granted and trial was rescheduled for August 19th, 2024.

On March 25th, 2024, you appeared before Judge Bryant for a hearing on detention.  After considering the testimony and the arguments of the parties, Judge Bryant determined that there were conditions that could be imposed upon you that would allow your release.  You were released on a $5,000 unsecured bond pending trial.

On July 19th, 2024, you filed another motion to continue. That motion was granted and trial was rescheduled for September 23rd, 2024.

Now, before that trial date, you informed the Court that it was your desire to change your plea. It's my understanding that we are here today for you to change your plea from not guilty to guilty as to count two of this indictment. Is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Now, Mr. Cox, before you do that, I want to go over some things with you. I want you to understand that if you change your plea today, you will be sentenced according to the United States Sentencing Guidelines.

Now, these guidelines were created so we would have parity in sentencing across the country, which basically means a similar type of sentencing.

So in other words, if you were found guilty or pled guilty to this same charge in another district court some place else in the country, you would get a similar type of sentence as you will in this court.

But I want you to also understand that these guidelines are advisory. That means that if I

do not believe that the guideline range is an appropriate sentence, I do not have to follow it. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  I also want to tell you that at this point in time, I cannot tell you what your guideline range will be.  Mr. Cox, I don't know anything about you, and until I receive that presentence report, I'm not going to know anything about you.

Now, Mr. Wynn may be able to give you an idea what he believes the guideline range will be, but that is just an educated guess.  Until he receives your presentence report, he's not going to know for sure what your guideline range will be either.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, Mr. Cox, I want to advise you that if you are sentenced to a term of confinement, there is no parole in the federal system.  This is different than in state court where you can parole out.  In federal system, you will serve the time that you get less what we call good time, which right now is 54 days per year.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, you may change your plea if you would like to, but you don't have to.  You have the right to persist on your not guilty plea.

You have other constitutional rights that I'm going to go over with you.  You have the presumption of innocence.  That means that the government would have to come into court and prove beyond a reasonable doubt these charges against you.

You have the right to an attorney. Mr. Wynn has been appointed to represent you in this matter.  You have the right not to incriminate yourself.  In other words, you don't have to say anything that can be used against you in a court of law.

You have the right to a jury trial.  And at that jury trial, you have the right to confront government's witnesses against you, and you have the right to have witnesses testify on your behalf.

But if you change your plea today from not guilty to guilty, you are waiving these constitutional rights, you'll be found guilty of this offense, there will be no further proceedings and we will go directly to sentencing.  Do you

understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Are you ready to proceed?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  I'm going to ask you to please stand, and Ms. Gray will give you the oath.

[DEFENDANT SWORN.]

THE COURT:  You may be seated, Mr. Cox. Mr. Jones, has a plea agreement been entered into with the defendant?

MR. JONES:  Yes, Your Honor.

THE COURT:  Can you go over it for me please?

MR. JONES:  Yes, Your Honor.  Your Honor, as the Court noted, Paragraph 1 of the plea agreement sets forth Mr. Cox's agreement to plead guilty to count two of the indictment in exchange for which if the Court accepts this plea agreement and after the Court has pronounced sentence on count two, the government will agree to move to dismiss counts one and three of the indictment as they pertain to Mr. Cox.

Your Honor, Paragraph 2 of the plea agreement sets forth the factual basis for Mr. Cox's

plea of guilty to count two of the plea agreement. And in that paragraph, Mr. Cox admits and stipulates that the following facts are true: On October 10th, 2023, Arkansas State Police Corporal Bernard Pettit was on eastbound Interstate 30 in his ASP patrol vehicle near Exit 7 in Miller County, Arkansas, in the Western District of Arkansas.

While observing eastbound traffic on I30, Corporal Pettit saw a silver Nissan Altima following the vehicle in front of it more closely than he knew from this training and experience was reasonable and prudent under the circumstances in violation of Arkansas Code Annotated Section 27-51-305.

Corporal Pettit caught up to the silver Altima as it left Interstate 30 at Exit 7. Corporal Pettit then initiated his emergency lights, and the Altima came to a stop along the exit ramp.

Corporal Pettit approached the silver Altima on its passenger side and contacted its driver and sole occupant, Mark T. Oliver, hereinafter Oliver. Corporal Pettit advised Oliver that he had been stopped because he was following the vehicle in front of him too closely.

Oliver replied, was I? And suggested he might have been distracted by using a smartphone app

to look for a rest area.  Oliver provided Corporal Pettit a Georgia driver's license.

Oliver told Corporal Pettit that he was driving to Indianapolis, Indiana, from Houston, Texas, but was an Atlanta, Georgia, resident. Oliver provide Corporal Pettit documentation showing that he had rented the Altima in Georgia only the day before.  Oliver said that after renting the Altima, he had driven it to Houston and was now on his way to Indianapolis, Indiana, before returning to Georgia.

After running the standard law enforcement checks on Oliver and Altima, Corporal Pettit asked Oliver if there was anything in the vehicle's trunk. Oliver said there was not.  Corporal Pettit then requested Oliver's consent to search the Altima's trunk, and Oliver granted it.  Oliver then gave Corporal Pettit the Altima's key fob with which to open the trunk.

Inside the trunk, Corporal Pettit found a duffle bag containing 14 separate packages each weighing approximately one kilogram.  From his training and experience, Corporal Pettit recognized these packages as so-called bricks of controlled substance.  Corporal Pettit arrested Oliver, advised

him of his Miranda rights, and seized the 14 bricks.

A sample of the substance in one of the bricks was later field-tested and reacted presumptively positive for the presence of cocaine, a Schedule II controlled substance.

Oliver told the Someland Security investigation's agent who came to the scene of the stop that he had been traveling in tandem with another rental vehicle, a newer modeled white Ford Mustang with a black convertible top.

Oliver said there were two men in the Mustang, one black and one Hispanic, who had been traveling ahead of him and giving him advance warning of any police presence.  Oliver said the black male driving the Mustang was Spencer, but he did not know the Hispanic male's name.

Oliver said the men in the Mustang had warned him of Corporal Pettit's patrol vehicle before telling him they were stopping at the gas station at Exit 7.  Oliver's description of the Mustang and its two male occupants was relayed to other ASP troopers working on Interstate 30.

Oliver told investigators he had been transporting the duffle bag from Houston, Texas, to Indianapolis, Indiana, at Spencer's request.  He

said he expected to be paid $5,000 for doing so.

Oliver said he had never looked inside the duffel bag but thought it contained either marijuana or cocaine.  Oliver said that he had arrived at the Hotel Indigo in Houston, Texas, on the morning of October 10, 2023, where he found Spencer and a Hispanic male waiting for him in the parking lot.

Oliver said Spencer then placed the duffel bag in the trunk of Oliver's rental car.  Oliver said he was told to follow Spencer and the Hispanic male who would be in the white Mustang but to travel a few minutes behind them.

During the trip, Oliver said he communicated with Spencer via the Telegram app on his cell phone.  Corroborating this, investigators saw Telegram messages on Oliver's cellphone from a person named Spence.

In the messages, Spence sent Oliver the address of the Houston, Texas, Hotel Indigo and later warned Oliver where police vehicles were located.

While Oliver was being questioned, ASP Trooper Dustin Arnold located a white Ford Mustang with a black convertible top traveling east on Interstate 30 near Arkadelphia in Clark County,

Arkansas.

Trooper Arnold stoped the white Mustang for a violation of Arkansas Code Annotated 27-51-305.  The black male driver of the vehicle was identified by his Georgia driver's license as the defendant, Cox.  The Hispanic male passenger was identified by his Georgia driver's license as the codefendant, Daniel Eliud Ruiz-Magdaleno, hereinafter, Ruiz.

Cox and Ruiz matched the descriptions Oliver had given for the man he had been transporting the cocaine with.  Cox also corroborated that the white Mustang he and Ruiz were traveling in was a rental car.

Trooper Arnold had Cox step out of the vehicle before asking where he and Ruiz were traveling from.  Cox said they were coming from Houston, Texas.  Trooper Arnold then asked where Cox and Ruiz were going.  The men replied that a situation had arisen and they decided to go back home.

Cox told Trooper Arnold that he and Ruiz were now driving to Little Rock Airport to catch a flight home to Atlanta, Georgia.  When trooper Arnold asked what kind of situation had arisen, Cox

said that it was private.

Trooper Arnold then inquired of Ruiz separately about his travel with Cox. Ruiz said he and Cox had initially planed to drive the Mustang from Houston to Atlanta but had later decided to just take the airport.

Trooper Arnold then asked Ruiz why the men would drive through Arkansas if they were traveling from Texas to Georgia. Ruiz said he had family in Memphis. When Trooper Arnold asked Ruiz if he was planning on going to Memphis, Ruiz replied, umm, not really. It was just this way.

Trooper Arnold then requested and received Cox's consent to search the rental Mustang. No drugs or other contraband were found in it, and Cox and Ruiz were released.

The 14 bricks of suspected cocaine found in Oliver's rental car were later taken to the Arkansas State Laboratory for chemical analysis. A forensic chemist of that laboratory has since reported that six of the 14 bricks hold white powdery substances containing cocaine. The white powdery substances in the remaining eight bricks have not yet been analyzed but appear the same as the substances in the six tested bricks.

The chemist further reported that the aggregate weight of the white powdery substances containing cocaine from the six tested bricks is about -- or is at least 6,020.3 grams or a little more that six kilograms. Cocaine is a Schedule II controlled substance under federal law.

Although the chemist weighed the eight untested bricks with their packaging, the aggregate weight of the substances from the six tested bricks, which were weighed without their packaging, indicates the total weight of the substances from all 14 bricks is approximately 14,047.3 grams or slightly over 14 kilograms.

Guest records obtained by HSI showed that Ruiz rented a room at the hotel -- at the Houston, Texas, Hotel Indigo from October 9th to October 10, 2024. The hotel's security video shows Ruiz entering on October 9 carrying a duffle bag like the one later found in Oliver's trunk.

Later the same day, Cox is seen entering the hotel after which he can Ruiz leave and return together. Shortly before 8:00 a.m. on October the 10th, Ruiz is seen carrying the same duffel bag out of the hotel and then returning without it. About 90 minutes later, Cox and Ruiz are seen walking out

of the hotel within roughly a minute of each other.

On February 9th, 2024, following Cox and Ruiz's indictment in this matter, HSI investigators executed a search warrant at an apartment in Atlanta, Georgia. Inside the apartment, investigators found evidence indicating it was occupied by both Cox and Ruiz, including Ruiz's Mexican passport and a wallet containing cards bearing Cox's name.

They also found and seized multiple firearms, a drug transaction ledger and substances that field-tested positive for cocaine and heroin, also a controlled substance under federal law. The results of laboratory analyses of these substances have not yet been received.

In considering -- in consideration of the foregoing, the government can prove beyond a reasonable doubt and Cox hereby admits and stipulates that on or about October the 10th of 2023 in the Western District of Arkansas, Texarkana Division, he, along with his codefendant, Daniel Eliud Ruiz-Magdaleno, knowingly and intentionally possessed a controlled substance, namely more than five kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II

controlled substance, with intent to distribute that controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(a)(2).

Your Honor, in addition to that factual basis, on page 7 of the plea agreement, the Court will see that there is a stipulation on drug quantity. And in that paragraph, which is Paragraph 9, the parties agree that the most readily provable amount of drugs for which the defendant should be held accountable is more than five kilograms but less than 15 kilograms of cocaine.

The parties further agree that that stipulated drug quantity results in a gross-base offense level of 30 under the guidelines. However, should the Court by chance find the defendant qualifies as a career offender under the guidelines, the defendant nonetheless acknowledges in Paragraph 10 that his gross-base offense level will be adjusted accordingly.

Your Honor, in the following paragraph, Paragraph 11, I'll touch on briefly, the defendant does acknowledge in writing that the offense to which he's pleading guilty, count two, carries with it a mandatory minimum term of imprisonment for ten

years.

Your Honor, on page 8 of the plea agreement in Paragraph 12, the defendant acknowledges that if a term of supervised release is imposed on him as part of his sentence, then he will at a minimum be subject to the standard conditions of supervised release, which are set forth in Subparagraphs A through M of Paragraph 12 and also that he may be subject to other special conditions of supervised release as may be determined by the Court.

Your Honor, one last thing I'll note before I take a seat is that this particular plea agreement does not contain the standard appellate and post-conviction rights waiver that we often see. And that's by negotiation with the public defender in this matter.

THE COURT:  Okay, thank you.

MR. JONES:  Yes, Your Honor.

THE COURT:  Mr. Wynn, is this an accurate statement of the plea agreement your client has entered into?

MR. WYNN:  It is, Your Honor.

THE COURT:  Okay.  Mr. Cox, Mr. Jones went over certain paragraphs within the plea agreement.

Do you have any questions about any thing that he just went over?

THE DEFENDANT:  No, Your Honor.  I do not.

THE COURT:  Okay.  Now, there were other paragraphs within the plea agreement that he did not go over specifically here in court today.  Do you have any questions about those other paragraphs?

THE DEFENDANT:  Not at the time, Your Honor, no.

THE COURT:  Now, Mr. Cox, have you read this plea agreement?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Did you go over it with your attorney, Mr. Wynn?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And do you understand what this plea agreement says and does?

THE DEFENDANT:  I do.

THE COURT:  Okay.  Now, I have an executed -- a copy of an executed plea agreement that appears to have your signature.  Did you sign this document, Mr. Cox?

THE DEFENDANT:  I did.

THE COURT:  Okay.  When you signed it, was it voluntary and of your own free will?

THE DEFENDANT:  Yes, it was.

THE COURT:  Okay.  Did anyone force or threaten you to get you to sign it?

THE DEFENDANT:  No, ma'am.

THE COURT:  Did anyone make you any promises other than those that are in the plea agreement to get you to sign it?

THE DEFENDANT:  No.

THE COURT:  Did anyone put any pressure on you?

THE DEFENDANT:  No.

THE COURT:  Okay.  Have you had any alcohol to drink, Mr. Cox?

THE DEFENDANT:  No.

THE COURT:  Have you had any drugs, prescription or otherwise, that would any way influence you or impede your ability to make a free and voluntary decision?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And are you satisfied with your attorney, Mr. Wynn?

THE DEFENDANT:  I am.

THE COURT:  Okay.  Mr. Jones, if this matter went to trial, would the government be able to prove everything in the stipulation of facts

that's in the plea agreement beyond a reasonable doubt?

MR. JONES:  We would, Your Honor.

THE COURT:  Okay.  Mr. Cox, do you have any questions on anything that we have done so far this morning?  Any questions at all?

THE DEFENDANT:  No, ma'am.

THE COURT:  Okay.  I want you to understand that if you change your plea today, I am going to order a presentence report.  This report is going to help me determine an appropriate sentence.

After that report has been completed, your attorney will get a copy, Mr. Jones will get a copy and I'm going to get a copy.  Mr. Wynn will go over that presentence report with you.  If there's anything contained in the report that you do not agree with, you have the right to object.  I will resolve all objections whether they come from you or they come from the government at the time of sentencing.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Are you ready to proceed?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  I need you to stand up

one more time, Mr. Cox, so I can enter -- get this plea from you.  Eugene Spencer Cox, how do you plead to count two of the indictment, guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  Okay.  You may be seated. Now, Mr. Cox, Mr. Jones went over what he believed the government would be able to prove if this matter went to trial.  Do you in fact believe that if this matter did go to trial, the government be able to prove everything in that stipulation of fact that's in the plea agreement beyond a reasonable doubt?

THE DEFENDANT:  Yes.

THE COURT:  In other words, they could prove this charge against you, is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Mr. Jones, any objection from the government as to Mr. Cox's guilty plea?

MR. JONES:  None, Your Honor.

THE COURT:  Any reason or objection from the defense?

MR. WYNN:  No, Your Honor.

THE COURT:  Okay.  Mr. Cox, it is the finding of this Court in the case *The United States*

*of America versus Eugene Spencer Cox* that you are fully competent and capable of entering an informed plea, that your plea of guilty is both knowing and voluntary and it is supported by an independent basis of fact relative to the essential elements of the offense; therefore, I'm accepting your guilty plea and find you guilty of count two of the indictment.

As I said, I am ordering a presentence report to help me with sentencing. After that, you and Mr. Wynn will have a chance to have input into that report. Ms. Albritton is going to be the probation officer who will do that interview. The quicker you set up your interview, the quicker she can get that report done.

That report usually takes about three months to complete after which time, we'll be back in court and you will be sentenced. Mr. Wynn?

MR. WYNN: Your Honor, the defense would like to move to respectfully request to this Court that Mr. Cox be allowed to remain out of custody between now and the date of his sentencing.

The reason for this, Your Honor, is that Mr. Cox has had zero violations during his time out of custody. He has gotten himself from Georgia to

Texarkana twice at this point, Your Honor.

Additionally, he has maintained gainfully employment as approved by the probation office during the entire time that he has been on release, and he spends a lot of his time -- I know this may not be a consideration, but he does take care of his elderly parents who are ill, Your Honor, and spends a good amount of his time doing that as well as taking care of his children.  And it would mean a lot to him to be able to remain out between now and that date, Your Honor.

THE COURT:  Mr. Jones?

MR. JONES:  Your Honor, in consideration of Mr. Cox's general compliance, we'll just defer to the Court's discretion on that question.

THE COURT:  Okay.  Mr. Cox, I'm going to tell you right now, under the statute you should go into custody because you are looking at a very high maximum sentence, okay.  So under the statute, you should go in.

I'm going to let you remain out because you've complied so far.  But if somebody tells me that you are not complying, I'm going to pull you back in, and you're going to go into custody, okay?  I'm giving you fair warning on that.  You've got to

continue to comply just like you've been doing since you were released by Judge Bryant back whenever, okay.

So the other thing I'm going to tell you is that you need to be available to go over the presentence report with your attorney, okay, because you are a good distance away from him.  So you're going to need to be available to go over that with him so he can make whatever comments or objections or know your feelings about that presentence report, okay.

The other thing is that when it's time to be sentenced, you've got to be here.  If you're not here, you're going to be charged with an additional crime, and I don't want that to happen.  So comply with all the conditions, be available to visit with your attorney and also be here in court when it's time to be sentenced, okay?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  I am going to -- as I said, we will -- the presentence report usually takes about three months to complete.  Hopefully, we will be back in court in about four to six months at which time you will be sentenced, okay.

If nothing further, ladies and gentlemen,

court is adjourned.

[Court adjourned at 9:00 a.m.]

C E R T I F I C A T E

I, Jodi T. Wade, an Official Court Reporter for the United States District Court, Western District of Arkansas do hereby certify that the foregoing is a transcript of proceedings which occurred at the time and place herein designated, consisting of 28 pages which was recorded by a court-approved electronic sound recording means and then transcribed via a computer personally by me or under my supervision, and this transcript is a true, correct and complete transcript of said proceedings as reflected herein to the best of my ability after listening and transcribing said sound recording.

Signed this 5th day of May, 2025, in the City of Hot Springs, County of Garland, State of Arkansas.

/S/ Jodi T. Wade

Jodi T. Wade, CCR
Official Court Reporter
U.S. District Courts
Western District of Arkansas