IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA,

      PLAINTIFF,

VS.                     CASE NO. 4:cr-40001-001

EUGENE SPENCER COX,

      DEFENDANT.


TRANSCRIPT OF PROCEEDINGS
SENTENCING HEARING
BEFORE THE HONORABLE SUSAN O. HICKEY
ON APRIL 4, 2025
TEXARKANA, ARKANSAS


FOR THE PLAINTIFF:

      MR. GRAHAM JONES
      U.S. ATTORNEY'S OFFICE
      ASSISTANT U.S. ATTORNEY


FOR THE DEFENDANT:

      MR. ALEX WYNN
      ASSISTANT FEDERAL PUBLIC DEFENDER
      FEDERAL PUBLIC DEFENDER'S OFFICE


Proceedings recorded by voice stenography,
transcript produced by computer.


JODI T. WADE
FEDERAL OFFICIAL COURT REPORTER
100 RESERVE STREET, RM 347
HOT SPRINGS, AR 71913

Jodi Wade, CCR

P R O C E E D I N G S

[Proceedings commencing in open court at 12:30 p.m.]

THE COURT:  Good afternoon, ladies and gentlemen.  We are in the United States District Court for the Western District of Arkansas, Texarkana Division.  We are here on Criminal Case Number 4:24-cr-40001-001, *The United States of America versus Eugene Spencer Cox*.  How are you today, Mr. Cox?

THE DEFENDANT:  I'm fair, Your Honor.

THE COURT:  Mr. Cox, I appreciate you getting here as early as you did.  I know that the benches are not very comfortable, and thank you for your patience.

THE DEFENDANT:  You're welcome.

THE COURT:  You're welcome.  Today is a very important day.  You are here to be sentenced, and I want you to understand everything that is going on.  If you do not understand something, please tell your attorney, Mr. Wynn.  We will stop, take a break, he will be able to explain things to you, then we'll go back into session, okay?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  Let the record reflect that the defendant, Mr. Eugene Spencer Cox, is in

Jodi Wade, CCR

court today along with his attorney, Mr. Alex Wynn.

Appearing on behalf of the United States government is Assistant U.S. Attorney, Mr. Graham Jones.  Is the government ready to proceed?

MR. JONES:  Yes, Your Honor.

THE COURT:  Is the defense ready to proceed?

MR. WYNN:  We are, Your Honor.

THE COURT:  Okay.  Now, Mr. Cox, as I said, I want you to understand what we're doing today.  So what I am going to do is -- the first thing I'm going to do is I am going to go over the steps that we'll take during the hearing that way you're going to know each step of the way what to expect.

The first thing that will happen is you will be placed under oath, and I am going to ask you just a few simple questions.  After that, I will go over the events that led us here today at which time I will go over the charge that you pled guilty to and the statutory penalty for that charge.

After that, we will look at the presentence report.  Now, this is the report that was created by probation and your attorney has gone over with you.  I will resolve all objections to

that report at that time.

After that, we will look at the guidelines.  Now, as I told you at your change of plea hearing, these guidelines are advisory, but I am urged to follow them.

The way that your guideline range is determined is we look at the offense that you pled guilty to and we look at your criminal history.  Both of those are assigned numbers.  Those numbers are placed upon a grid.  Where the lines intersect on that grid, that is your guideline range.  I will go over that range with you, and then I'm going to go over the statutory penalty.

After that, I will ask your attorney if he would like to speak on your behalf.  Then I'm going to ask you if you would like to speak.  You can if you would like to, but you don't have to.  Then I'm going to tell you my intended sentence and the reason for that sentence.  Then sentence will be imposed, and then I will tell you about your appeal rights.

Now, those are the steps that we are going to take this afternoon.  Do you understand them and know what to expect?

THE DEFENDANT:  Yes, Your Honor.

Jodi Wade, CCR

THE COURT: Okay. Are you ready to proceed?

THE DEFENDANT: Yes.

THE COURT: Okay. I'm going to ask you to please stand, and Ms. Rothwell will give you the oath.

[DEFENDANT SWORN.]

THE COURT: Mr. Cox, you may be seated. Now, Mr. Cox, as I said, I'm just going to ask you a few simple questions. You are under oath so I will expect for you to tell me the truth.

Have you had any alcohol to drink today?

THE DEFENDANT: No.

THE COURT: Have you had any drugs, prescription or otherwise, that would any way influence you or impede your ability to make a free and voluntary response?

THE DEFENDANT: No.

THE COURT: Okay. Do you know and understand what we are doing today, that you're here to be sentenced?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And are you satisfied with your attorney, Mr. Wynn?

THE DEFENDANT: Uh-huh. Yes.

Jodi Wade, CCR

THE COURT:  Okay.  Now, what I am going to do is I am going to go over the events.  If I misspeak, please let me know.

On January 18th, 2024, a grand jury in and for the United States District Court for the Western District of Arkansas, Texarkana Division, filed a three count indictment against you and one other individual.

In that indictment, counts one, two and three pertain to you.  You have pled guilty to count two of this indictment, and it is my understanding that after you are sentenced today on this count, it is the intention of the United States government to move to dismiss counts one and three.  Is that correct, Mr. Jones?

THE DEFENDANT:  That's right, Your Honor.

THE COURT:  Okay.  So Mr. Cox, I am going to go over count two, and then I'm going to go over the statutory penalty for this count.

Okay, count two reads:  On or about October 10th, 2023, in the Western District of Arkansas, Texarkana Division, the defendant, Eugene Spencer Cox, a.k.a. Spence, and Daniel Ruiz-Magdaleno did knowingly and intentionally possess a controlled substance, namely more than

Jodi Wade, CCR

five kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, with the intent to distribute that controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(a)(2).

The statutory penalty for this is not less than ten years and not more than life imprisonment, not more than a $10 million fine or both.  If you are sentenced to a term of confinement, then a term of supervised release may also be part of this sentence.

If after if your release from confinement if you violate a term of this supervised release, then an additional term of confinement can be imposed upon you.  There is also a $100 special assessment that is owed to the government.  Now, this is the charge that you have been found guilty of and the statutory penalty for this charge.

On January 18th, 2024, a warrant was issued for your arrest.  On February 9th, 2024, you were arrested on the warrant in the Northern District of Georgia.

On February 14th, 2024, you appeared before a magistrate judge in the Northern District

Jodi Wade, CCR

of Georgia for your Rule 5 hearing at which time you were transferred to this district.

On March 13th, 2024, you filed a waiver waiving your right to personally appear in court and consented to conducting your court proceedings by videoconference. On that same day, you appeared before Magistrate Judge Barry Bryant for arraignment and plea to the indictment.

You appeared without counsel and executed an affidavit that you had insufficient funds to hire an attorney. At that point in time, Judge Bryant appointed Mr. Alex Wynn to represent you. Judge Bryant informed you of your rights, the maximum possible penalty and the payment of the special assessment.

You waived the reading of the indictment; however, the substance of the charges were related to you. You were informed that these charges against you were felonies. You waived your right to a detention hearing but reserved the right to revisit the issue of detention at a later date.

You entered a plea of not guilty to the charges. Trial was scheduled for April 15th, 2024, and you were remanded to the custody of the United States marshal pending trial.

Jodi Wade, CCR

On March 20th, 2024, you filed a motion to continue. That motion was granted and trial was rescheduled for August 19th, 2024.

On March 25th, 2024, you appeared before Judge Bryant for a hearing on detention. After considering the testimony and the arguments of the parties, Judge Bryant determined that there were conditions that could be imposed upon you that would allow your release. You were then released on a $5,000 unsecured bond pending trial.

Then on July 19th, 2024, you filed another motion to continue. That motion was granted and trial was rescheduled for September 23rd, 2024.

Before that trial date, you informed the Court that it was your desire to change your plea. On October 2nd, 2024, you appeared before me and changed your plea from not guilty to guilty as to count two of this indictment. I accepted your guilty plea, and you were adjudged guilty of this offense.

At that time, I ordered a presentence report to help me with sentencing. You were then allowed to remain out on your previously set bond and conditions pending sentencing.

So as I said, I ordered a presentence

Jodi Wade, CCR

report.  I have received a copy of that report.  The original report was dated November 27th, 2024, and it was revised on January 3rd, 2025.

The government filed no objections. Mr. Wynn filed ten objections on your behalf, and we're going to look at those in just a minute.

Mr. Wynn, have you seen that presentence report and gone over it with Mr. Cox?

MR. WYNN:  I have, Your Honor.

THE COURT:  Okay.  Mr. Cox, Mr. Wynn went over that presentence report with you.  Did you understand what that report said?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you have any questions about it?

THE DEFENDANT:  Not at the moment.

THE COURT:  Okay.  And Mr. Jones, you've seen it on behalf of the government?

MR. JONES:  I have, Your Honor.

THE COURT:  Okay.  So, Mr. Cox, as I said, there have been ten objections filed on your behalf, and we're going to look at those right now.

The first objection has to do with Paragraphs 42 and 43.  Mr. Cox, this is the section of the presentence report that has to do with what

we call offense level computation.  It's, basically -- this part of the presentence report is determining one of those -- excuse me, one of those numbers that goes on that grid to come up with your guideline range.

Okay, you contend that the enhancement in these paragraphs, which is 42 and 43 -- forty-two has to do with a dangerous weapon.  Forty-three has to do with maintaining a drug premises.

You contend that these enhancements in these paragraphs are not applicable because they are not relevant conduct.  Under 1B1.3(a), a defendant's offense level is based upon all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant, and in the case of a jointly undertaken criminal activity, all acts and omissions of others that were within the scope of the jointly undertaken criminal activity, in furtherance of the criminal activity and were reasonably foreseeable in connection with that criminal activity.

With the respect to offenses that would require a grouping of multiple counts, all acts or omissions as described above are considered if they are part of the same course of conduct or common

scheme or plan as the offense of conviction.

In this case, defendant and Daniel Ruiz were involved in the conspiracy to distribute and to possess with the intent to distribute cocaine.  To accomplish this, they acquired cocaine in Houston, Texas, and transported it across state lines to be distributed in other states.  In the offense of the conviction, the drugs were being transported from Texas to Indiana to be distributed.

After these defendants were indicted for this conduct, an apartment in Atlanta, Georgia, that had been occupied by the defendant and Ruiz were searched by HSI investigators.  During the search of the apartment, investigators found and seized multiple firearms, a drug ledger and a quantity of cocaine.

The drug ledger, guns and drugs seized in this Atlanta apartment were a part of the same course of conduct as the incident offense.  The fact that there was a time interval between the two does not change this as they were involved -- as they involved similar conduct, possessing cocaine with the intent to distribute; the same individuals, the defendant and Ruiz; and the same purpose, which was trafficking cocaine.

The conduct was also within the scope in furtherance of and reasonably foreseeable in connection with the defendant's criminal activity of trafficking cocaine.

Thus, this conduct is relevant conduct and will be considered in determining the defendant's offense level.

Under 2D 1.1(b)(1), a two-level enhancement is applied if a dangerous weapon, including a firearm, is possessed.  This enhancement is applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense as in the case where the weapon is an unloaded hunting rifle in a closet.

Under 2D1.1(b)(12), a two-level enhancement is applied if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, including the storage of a controlled substance, for the purpose of distribution.

Among the factors that courts consider to determine whether defendant maintained the premises are:  They held a possessory interest in the premises and the extent to which they controlled access to or the activities at the premises.

Jodi Wade, CCR

Manufacturing or distributing a controlled substance need not be the sole purpose for maintaining the premises, but it must be one of the primary -- the defendant's primary or principle uses of the premises.

In making this determination, the Court considers how frequently the premises is used for manufacturing or distributing a controlled substance and how frequently it is used for lawful purposes.

In this case, defendant's apartment in Atlanta was searched by authorities.  During the search, evidence was found indicating the apartment was occupied by both the defendant and his codefendant, Daniel Ruiz.  This evidence includes the defendant's Mexican passport and a wallet containing cards bearing Cox's names.  Also found in the apartment were multiple firearms, a drug transaction ledger, 46.54 grams of cocaine and 11.2463 grams of MDMA.

Based upon this evidence, it appears that the defendant had a possessory interest in the premises and that one of its primary or principle uses was drug distribution and/or storage.  Also, as multiple firearms were present in the apartment, dangerous weapons were possessed.

Jodi Wade, CCR

Accordingly, the two-level enhancement in each of Paragraph 42 and 43 for maintaining a drug premises and possessing a dangerous weapon were correctly applied.  No change to these paragraphs is warranted.  Objection Number One is denied.

Mr. Wynn, I will note your continued objection to my ruling on this.

MR. WYNN:  Thank you, Your Honor.

THE COURT:  You're welcome.  Okay, Objection Two, defendant objects to Paragraph 45, okay.  He contends that he was not a leader, organizer, manager or supervisor in the criminal activity; therefore, the two-level enhancement in this paragraph is not applicable.

Under 3B1.1(c), a two-level enhancement is applied if a defendant as a leader -- an organizer, leader, supervisor or manager in a criminal activity involving less than five participants.

A participant is a person who is criminally responsible for the commission of the offense but need not have been convicted.  There can also be more than one person who qualifies as a leader or organizer in a criminal activity.

In this case, the defendant was involved in criminal activity where he and codefendant Daniel

Jodi Wade, CCR

Ruiz maintained a large -- obtained a large quantity of cocaine in Houston, Texas.

Thereafter, they directed Mark Oliver in transporting these drugs from Houston to Indiana where the drugs would be distributed to others. Defendant and Cox were to pay Oliver $5,000 for his role in the offense while they stood to earn substantially more once the drugs were delivered to Indiana.

The defendant clearly is a leader, organizer, manager or supervisor in this criminal activity in that he was actively involved in committing the offense, exercised control over others, was involved in the recruitment of an accomplice and gained -- and claimed a larger share in the fruits of the crime.

Accordingly, the two-level enhancement for playing an aggravating role in the offense under 3B1.1(c) was correctly applied. No change to the PSR is warranted. Objection Two is denied.

Mr. Wynn, I will continue to note your objection as to my ruling.

MR. WYNN: Thank you, Your Honor.

THE COURT: You're welcome. Objection Three, defendant objects to the offense level

Jodi Wade, CCR

computation on page 9. He contends that he should have received two levels off for being a zero-point offender under 4C1.1 and for qualifying for the safety valve under 5C1.2.

While defendant was a zero-point -- has zero criminal history points, he does not qualify for the two-level decrease under 4C1.1 because he possessed a firearm in connection with the offense, and he was a leader, organizer of the criminal activity.

He also does not qualify for the two-level reduction under 2D1.1(b)(18) because he does not qualify for the safety valve under 5C1.2 in that he possessed a firearm in connection with this offense. No change to the PSR is warranted. Objection Three is denied.

I will note your objection, Mr. Wynn.

MR. WYNN: Thank you, Your Honor.

THE COURT: Objection Four, defendant objects to Paragraph 89. He contends that he qualifies for the safety valve under 5C1.2 and should not be subject to the ten-year mandatory minimum sentence in this case.

As previously held by the Court, the defendant possessed a firearm in connection with

this offense and thus does not qualify for the safety valve under 5C1.2.

Accordingly, he is subject to the ten-year mandatory minimum sentence.  No change to the PSR is warranted.  Objection Four is denied.

Note your objection, Mr. Wynn.

MR. WYNN:  Yes, Your Honor.

THE COURT:  Five, defendant objects to Paragraphs 47, 51, 88, 89, 90 and all corresponding paragraphs to the offense level calculations.

Based upon these objections, defendant contends that his adjusted offense level is 26, his criminal offense level is 23 and his guideline range is 46 to 57 months.

Based upon the drug quantity stipulated to in the plea agreement and the Court's prior rulings regarding these enhancements, defendant's base offense level is 30, his adjusted offense level is 36, his total offense level is 33 and his guideline range is 135 to 168 months.  No change to the PSR is warranted.  Objection Five is granted.

Mr. Wynn, your continued objection is noted.

Six, defendant objects to Paragraph 59. He contends that the conviction in this paragraph

Jodi Wade, CCR

was not accurately attributable to him.  Okay, this, Mr. Cox, is, basically, where the Court starts looking at or calculating your total -- your criminal history score and category, okay.

This conviction information was contained in the records check of the defendant out of Georgia and will remain in the PSR.  No change to the PSR is warranted.  Objection Number Six is denied.

It is noted by the Court that this conviction did not receive any criminal history points in that it is very old.  I'll note your objection.

Seven, defendant objects to Paragraph 61. He contends that the conviction in this paragraph is not accurately attributable to him.  The conviction information was contained in the records check of the defendant out of Georgia and will remain in the PSR.  No change is warranted.  Objection Number Seven is denied.

The Court, again, notes that no criminal history points were assessed as to this conviction as it is very old.  Mr. Wynn, I'll note your objection.

MR. WYNN:  Thank you, Your Honor.

THE COURT:  Eight, defendant objects to

Jodi Wade, CCR

Paragraph 67. He contends that the conviction in this paragraph is not accurately attributable to him. This is the section where it just talks about other arrests, okay. This conviction information was contained in the records check of the defendant out of Georgia and will remain in the PSR. No change is warranted. Objection Eight is denied.

The Court notes that this arrest was nol prossed, and so it received no criminal history points. Nine -- I note your objection, Mr. Wynn.

Nine, defendant objects to Paragraph 82. He states that he attended college in DeKalb County, Georgia, not Alabama. The probation officer has made this correction. No further change is warranted. Objection Number Nine is granted.

Ten, defendant objects to the asset section on page 15. He contends that he does not own the residence at 105 Ormond Street in Atlanta. Rather, Esther Edmonds owns this residence. The probation officer has made this correction. No further change is warranted. Objection Ten is granted.

Now, these -- I'm not sure if you've got an objection on that one, but I'll note all objections, Mr. Wynn.

Jodi Wade, CCR

These are my rulings as to the objections to the PSR.  I'm directing the clerk to file this report under seal of this court to be released to the attorneys of record without further order of this Court upon any appeal of this sentence.

I believe, Mr. Cox, Mr. Wynn plans to argue in reference to these -- my rulings on the objections or to these continued objections later on in the sentencing hearing, okay.  Is that correct, Mr. Wynn?

MR. WYNN:  Yes, Your Honor.

THE COURT:  Okay.  Now, Mr. Cox, the law prohibits certain conduct and it provides certain punishment for the conduct.  The punishment is contained within the statute.  It is also contained within the guidelines.  The guidelines are something that I must consider when determining an appropriate sentence.

These guidelines give me a range of sentence.  This range is based upon things that I now know about you that I did not know about you previously.  They are based upon the type of offense that you pled guilty to, your past criminal history, your present attitude and cooperation, and your personal background and present circumstances.

Jodi Wade, CCR

All those things go together to determine your guideline range.  They also help me determine an appropriate sentence.  So looking at your presentence report, you have a total offense level of 33, Criminal History Category of I.

As to custody under the statute, you are looking at not less than ten years and not more than life.  Under the guidelines, you are looking at 135 to 168 months.

Supervised release under the statute is not less than five years.  Under the guidelines, it is five years.  Probation is not authorized under the statute or the guidelines.

The fine under the statute is not more than $10 million.  Under the guidelines, it is 35,000 to $10 million.  Restitution is not authorized under the statute or the guidelines. There's a denial of federal benefits up to ten years under both the statute and the guidelines and a special assessment of $100 under both the statute and the guidelines.

This is what I believe an accurate statement of both the statutory penalty and the guideline range.  Does the government agree?

MR. JONES:  Yes, Your Honor.

Jodi Wade, CCR

THE COURT:  Does the defense agree?

MR. WYNN:  In light of the noted objections, yes, Your Honor.

THE COURT:  Okay.  Mr. Wynn, would you like to speak on behalf of Mr. Cox?

MR. WYNN:  Yes, Your Honor.

THE COURT:  Okay.

MR. WYNN:  Your Honor, obviously the defense, Mr. Cox's disappointed as a result of the rulings of the objections of this Court.  Primarily because of the mandatory minimum and the inability now to escape said mandatory minimum through the routes that we had anticipated for quite a while until through the nature of this process we find out, you know, finality today.  And that is part of the federal process, which can make things more difficult to swallow on the day of sentencing rather than in state court where you might find out or know everything ahead of time.

Your Honor, Mister -- I want to make this clear, Mr. Cox pled guilty to possession with the intent to distribute X amount of cocaine.  That is -- that is what happened in Arkansas.  That is what Mr. Oliver, who I would say, actually, very luckily for him, being the one pulled over first, as

Jodi Wade, CCR

so often happens, gets to be the narrator of the facts.

I've represented a lot of mules.  I've represented a lot of people that have claimed to be mules that were found to either not be or maybe they were, maybe they weren't.  But it's not uncommon in any situation for the person that's pulled over, the first person that's caught with any amount of narcotics to say, I'm just a pawn.  I'm just -- I'm just being used.  Here's where the real bad guys are.  Go get them.

And as you'll note, Mr. Oliver's name not attributed with Mr. Cox or Mr. Ruiz in federal court.  It earned him whatever it earned him, and I guess we wish him the best with whatever he ended up getting.

But, Your Honor, I will say that in all the mule cases that I've represented where people have people very commonly driving from Texarkana area through Hot Springs up into, you know, the Midwestern states to distribute, I don't recall any case in which the organizers or the leaders were tagging along for said ride.

They're typically veiled in their perspective areas waiting for drugs to arrive

allowing, you know, whoever to go down to go down and not, in fact, being the lead car for them in that situation.

You know, to me, I believe that the facts have been misconstrued to make it seem as though Mr. Cox is an organizer, leader, manager in any capacity in this case, Your Honor.  I believe that this was a tactic drawn up by three men who had intentions to distribute the narcotics they had, and they were traveling together.  And it's just smart.  In all honesty, it's just smart to have a car out front to see if a cop is coming and to warn the person in back.

However, as can be seen, although the person in the back for a totally unrelated reason, for following too closely, was pulled over, happenstance, but he was able to, you know, tell about Mr. Ruiz and Mr. Cox up ahead in time for them to still be pulled over.

I realize this will not change the mind of the Court today; however, other than that, there doesn't appear to be evidence that, you know, there was this -- any type -- and I know it's not required, but there was a big flowchart of employment or who's in charge of what in the

Jodi Wade, CCR

situation. I believe they're all equally set as drug dealers, as the traffickers of these drugs. And that's why -- and at the end of the day he pled to count two, which count two is possession with intent. Not count one, which is an overall conspiracy along with Mr. Ruiz, which would include him in all of Ruiz's activities.

Now, I wanted to begin with that because, you know, I don't want to make it seem like he's not accepting responsibility for what we're talking about here. But then we have this second situation, which is, you know, fast forward four months into the future, and now Mr. Cox, Mr. Ruiz were in Atlanta. Obviously, Mr. Oliver's gone down and experiencing his own legal troubles during this time.

I'm not sure if it's to the chagrin of the Court or not, but, you know, something that I picked up while working with Matthew Hill is tendency to draw in, you know, this idea of I guess painting a picture using maybe some type of pop culture, which would in this case, you know, be along the lines of a song, Pancho and Lefty by -- which is by Willy Nelson and also Merle Haggard, which the chorus goes: The Federales say they could have had them

any day.  They only let them slip away out of kindness, I suppose.

And in this case, it's kind of the basis of the argument there, is that Mr. Cox very well could have been arrested, could've been indicted, could have been -- you know, if could-have-beens were worth anything, I'd be much more successful up here, I think, more often.

But instead, he was allowed to return to Atlanta all the way across the country -- or halfway across the country, rather.  And this time passed.  And now, you know, we're dealing with warrants that were issued, and they go to pursuant Mr. Cox and Mr. Ruiz.

This is where immediately into the guns that are found in the apartment, Your Honor, and apologize for delaying to get there.

THE COURT:  It's all right.

MR. WYNN:  But this apartment was taken out in Mr. Ruiz's sister's name.  It is clear and we are not arguing the fact that Mr. Cox's presence around this apartment has not been well document.

However, when officers did breach said apartment due to Mr. Cox not even having keys for the apartment to give them, it was pretty quickly

noted who resided where and what room, whatever.

Mr. Cox, as we noted in our memorandum, which I forgot to stand upon in the first place but will do so now, you know, he has his own residence, primary residence, with Ms. Esther Edmonds back there.  But, obviously, he would frequent and visit the apartment that -- with Mr. Ruiz.

You know, what was found there was, essentially, a little wallet with some cards in it in one room.  And in that room, I would like to note that no firearms were found.  The narcotics were not found.  I believe that there was a ledger in the room.

But all in all, Your Honor, without just guessing, without making assumptions based on his presence in and around the apartment complex and building, there's no evidence that Mr. Cox ever entered the room that Mr. Ruiz obviously occupied based on his Mexican passport and many any other of his personal effects that were in his bedside.

It's also noted that there was a safe in the closet.  I believe the firearms and I think the drugs as well were contained within the safe.  There's no evidence that Mr. Cox had a key or combination to said safe.

Jodi Wade, CCR

I do believe that one of the firearms was leaned up against the safe but in the same closet as the safe, Your Honor.  And unfortunately, what the guidelines tend to say and what this Court's ruling has been today is that, you know, you are the company you keep in some manners.

However, I would just argue that there hasn't been enough presented -- there isn't enough evidence to prove that Mr. Cox had any possession at any time over any of these firearms or that it fit his M.O. in his lifetime of being around firearms.

And, Your Honor, with those two things in conjunction, Mr. Cox has not only accrued a lot of things, but he has lost a lot of things.  I think by the time I added it up, it may be, like, an eight-point swing and a brick wall at 120 months of, you know, getting -- maintaining the premises; getting leader; organizer; getting a gun enhancement; not getting a zero-point offender; not getting a 5C1.2 downward departure, which also includes the ability to get down to as low as 24 months, I believe.  All of that lost.

So, Your Honor, those would be my arguments on those points, and at this point, we would note that we respect the ruling of the Court,

Jodi Wade, CCR

although, obviously, continuing our objections. And I would just shift gears a little bit to Mr. Cox himself with the rulings in mind having been made.

Mr. Cox, he submitted a lot of letters. He's a well-liked, well-known, well-respected individual of his community. Deeply rooted there. He's a businessman. He's a business owner. He's worked many jobs, and he, you know, supports his family. He supports his parents. And ultimately, that's what led us here, is that the support started to get thin, it started to get harder.

And like so many others that come before this Court, he made the terrible decision to make fast and easy money, which as we know, there's no such thing. It comes with -- it comes with too much consequence. And that's what he's looking at today.

But he is -- you know, based on his criminal history and his age, you know, this isn't something that's been a part of his life his whole life. You know, he's created a family, he's well loved, he takes care of those people, he doesn't have a history of this, and so many other things, Your Honor.

And I believe that, you know, the sentence that we're forced to look at is the most appropriate

one, which is a downward variance, which we are requesting, respectful, Your Honor, and we're just, I guess, sad that we can't ask for more in this situation.

But in light of that, Your Honor, Mr. Cox would benefit from any, you know, training; educational; vocational.  He's noted in the PSR as having a past problem with alcohol, substance abuse if they offer that type of thing.  Anything that he could be eligible for, Your Honor, we would appreciate.

And he would like to be in the Atlanta area.  We hope at a low facility based on his characteristics; although, we know that's not something you can rule on.  And would you like for me to wait until it's time to make a motion or just roll into --

THE COURT:  A motion for?

MR. WYNN:  His release.

THE COURT:  Okay.  No, no, no.  We'll talk about it at the end.

MR. WYNN:  Yes, Your Honor.  So I would conclude my arguments under 3553(a).  I believe that the brunt of it is contained within my sentencing memorandum.

Jodi Wade, CCR

THE COURT: Okay. Okay.

MR. WYNN: Thank you.

THE COURT: Thank you, Mr. Wynn. Okay, Mr. Cox, would you like to visit with me about anything? This is your chance to tell me anything you would like.

THE DEFENDANT: Ma'am, I pretty much agree with what he said. That was the dumbest thing I've ever done, was getting involved with Daniel. The dumbest thing I've ever done. It has affected me in a devastating way.

I have yet to tell my family or my kids or parents. I don't know how to. So it's just one thing I've got to get back to Atlanta to do.

As far as me repeating this or being involved in any criminal activity, no, ma'am. That's not who I am. It's not who I am. I am loved, and I love life, and I do not want to spend it in prison. And that's pretty much what it is, ma'am.

THE COURT: Okay.

THE DEFENDANT: Thank you.

THE COURT: Thank you. I appreciate it, Mr. Cox. Mr. Jones, on behalf of the government?

MR. JONES: Very briefly, Your Honor.

Jodi Wade, CCR

Your Honor, I won't go into a great defense of the Court's rulings as regards to the application of the guidelines.  I think the Court has well articulated its reasons for making those findings particularly as regards to whether the items found in the apartment in Atlanta should be considered relevant conduct.

The case law and the Eighth Circuit makes that pretty clear.  There is a case, *United States versus Rivera*.  That's 76 F.4th 1085.  Also a case out of the Eighth Circuit and out of this district which is pretty similar facts.  In that case, the defendant was caught with drugs on one occasion to which he pled guilty and then subsequently on another occasion caught with a firearm.

And those occasions were separated by, I think, two to three months in that case.  Somewhat similar to this case.  And the Court, the District Court and the Eighth Circuit, agreed that the firearms were possessed in relevant conduct and would be the basis for an enhancement on the drug charges.  So we think that this is a pretty similar case to that one.

Regarding the possession of the firearms and whether that should be a basis for an

enhancement on, I guess, the issue of possession, the Court, I think, is correct in ruling that it is possession.  And in this case, I think what the Court is finding is that it is constructive possession that's required of Mr. Cox for that enhancement to apply.

The United States isn't alleging that Mr. Cox actually physically possessed these firearms, and I think what the Court's ruling is likely based on is the finding that he was in constructive possession of those firearms based on the facts available to the Court that indicate that he was in -- one of the occupants of the apartment in question and therefore had access to and the ability to control those firearms, and in the very least, at least the firearm that was found outside of the safe in the room that has been attributed to Mr. Ruiz.  So we believe those -- that the Court's rulings, as far as the guidelines go, are defensible.

Your Honor, at the end of the day, we would just ask the Court to sentence the defendant to something that's both consist with its rulings regarding the guidelines and that's a sentence that's separate from any application of the

Jodi Wade, CCR

guidelines the Court finds it would impose under the 3553(e) factors.

THE COURT:  Thank you.  Okay, Mr. Cox, I'm going to make an observation before I start going over the 3553 criteria.  Both -- Mr. Wynn did not talk about it today, but in his memo, he talked about the hardship that it's going to have both on your family and -- your children and your parents.

And I just want to say that I'm conscious every time I have to send someone to prison that they have family.  They have people who love them and want to be with them.  They have parents; they have children.  And that this defendant's conduct affected them because they're going to have to go away, but it's also affecting the people that they leave behind.

THE DEFENDANT:  True.

THE COURT:  And if that was my controlling factor, no one would ever go to prison.  No one would ever be punished for their conduct.  And -- because everyone's got parents; everyone's got family; everyone's people that don't want them to go away.  And so I consider it, but it can't control my ultimate decision in a case.

The other thing I want to comment on is

Jodi Wade, CCR

you are different because you haven't had a life of -- usually by the time someone is in federal court, they've been in and out of state court a lot. And they just kind of work their way up the ladder, and they finally end up in federal court.

THE COURT: You are not that defendant. You have had a business. You do not seem to fit the mold of most of my defendants, and I think it's sad that for whatever reason you decided you were going to get involved with these two other individuals and transport and possess drugs that were ultimately going to end up on the streets somewhere and harm the communities that those drugs ended up in. And so I just -- I think that this is somewhat -- it's a different situation, and it's a very sad situation.

THE DEFENDANT: Yes, ma'am.

THE COURT: Under the law, it is my duty to impose a sentence that I believe is sufficient but not greater than necessary. In making this determination, I look at the factors set out in Title 18, United States Code, Section 3553(a).

These factors include the nature and circumstance of the offense, the history and characteristic of the defendant, the need for the sentence imposed to reflect the seriousness of the

Jodi Wade, CCR

offense, to promote respect for the law, to provide just punishment, to deter criminal conduct and to protect society, the kind of sentences available, the kind of sentence in the sentencing range set out in the guidelines, policy statements by the sentencing commission and the need to avoid unwarranted sentence disparities.

In this case, I looked at the nature and circumstance of the offense.  This offense involves you and your codefendant, Daniel Ruiz, possessing a large quantity of cocaine with the intent to distribute those drugs to others.

The history and characteristics of the defendant, you have no criminal history; however, because you possessed a firearm, you are not eligible for the zero-point two-level reduction under 4C1.1 or the safety valve reduction under 2D1.1(b)(18).

The need for the sentence imposed, this is a serious crime.  There is a mandatory minimum of ten years.  The punishment should reflect that fact and should deter you and others from doing such conduct.

The need to deter you and to protect the public, this is your first drug offense; however, it

Jodi Wade, CCR

is a very serious one, and as such, you will be spending time in prison.

The need for medical and vocational treatment, you appear to have a problem with alcohol. I will recommend that you be allowed to take part in any substance abuse programs for which you qualify. You have also indicated you would like to take part in vocational or educational training. I will make a recommendation that you be allowed to take part in any of those programs for which you find an interest.

I looked at the JSIN data. The Sentencing Commission's Judiciary Sentencing Information data shows that during the last five years there were 784 defendants whose primary guideline range -- primary guideline was 2D1.1 and powder cocaine was the primary drug type with an offense level of 33, Criminal History Category of I.

Of the 784 defendants that received a sentence of imprisonment, the average length of imprisonment imposed was 106 months and the medium sentence imposed was 108 months. This data along with the other 3553 criteria will be considered by the Court in imposing an appropriate sentence.

Your attorney has asked for a variance

Jodi Wade, CCR

below the present guideline range.  Under the circumstances, the Court believes the guideline range of 135 to 168 months does not reflect the 3553 factors.

After considering all of these factors, I believe that that present guideline range is excessive.  Rather, a range of 120, which is the mandatory minimum, to 135 is more appropriate.  It is sufficient but not greater than necessary to impress upon you the seriousness of your conduct, provide just punishment, protect the public and promote respect for the law.  Therefore, a downward variance below the guideline range is being granted.

Now, Mr. Cox, I need to tell you where in this range I'm sentencing you.  I'm sentencing you at the bottom of that guideline range, which was 120 months in the BOP.

You will receive credit for time served in federal custody.  I'm recommending that you be allowed to take part in substance abuse treatment as well as vocational, educational programs and that you be housed as close to Atlanta, Georgia, as possible to be close to your family.

After you are released from BOP, you'll be placed on supervised release for a period of five

years.  This supervised release will be subject to all standard conditions of supervised release and the following special conditions:  Commit no federal, state or local crime; possess no firearm; possess no controlled substance; submit to DNA testing as required; submit to all reasonable searches; abstain from the use of alcohol; comply with all referrals by probation for inpatient/outpatient counseling, testing and/or treatment for alcohol and substance abuse problems. You are to not purchase, possess, use, distribute or administer marijuana or obtain or possess a medical marijuana card or prescription.  There will be no probation, no fine, no restitution and a special assessment of $100.

Unfortunately, Mr. Cox, as I said, you got involved in some illegal conduct that -- you were possessing cocaine that was intended to be distributed to other individuals.  And you possessed a lot.  Five kilograms is a lot of drugs.  These drugs destroy people's lives, and they promote crime.

Hopefully this sentence will impress upon you the seriousness of your conduct, provide just punishment, protect the public and promote respect

Jodi Wade, CCR

for the law.  There will be no departure.  There is a variance under 3553(a) factors.

Any objection to my intended sentence or any reason that sentence shouldn't be imposed from the government?

MR. JONES:  None, Your Honor.

THE COURT:  Any objection or reason from the defense?

MR. WYNN:  No additional ones, Your Honor.

THE COURT:  Okay.  Other than your --

MR. WYNN:  Other than the noted objections from earlier.

THE COURT:  Right.  Right.  Okay. Mr. Cox, I'm going to need you to stand so I can impose this sentence.  Eugene Spencer Cox, it is the judgment and order of this Court that you hereby be sentenced to a period of imprisonment of 120 months in the BOP.

You'll receive credit for time served in federal custody.  I'm recommending that you be allowed to take part in any substance abuse treatment for which you have an interest and you qualify; vocational, educational programs for which you find an interest and that you be housed in a BOP facility as close to Atlanta, Georgia, as possible

to be close to your family.

After you are released from BOP, you'll be placed on supervised release for a period of five years.  This supervised release will be subject to all standard conditions of supervised release as set out in your plea agreement and the following special conditions:  Commit no federal, state or local crime; possess no firearm or other dangerous device; possess no controlled substance and submit to drug testing as required by Title 18, United States Code, Section 3583(d).  Submit to DNA testing as required by Section Three of the DNA Analysis Backlog Elimination Act of 2000.

Submit to all reasonable searches of yourself, your vehicle and your residence upon reasonable suspicion of a violation of your supervised release by probation.  Failure to submit to search may be grounds for revocation.  You are to abstain from the use of alcohol.  You are to comply with all referrals by probation for inpatient, outpatient counseling, testing and/or treatment for alcohol and substance abuse problems.

You are to not purchase, possess, use, distribute or administer marijuana or obtain or possess a medical marijuana card or prescription.

Jodi Wade, CCR

If you currently possess a medical marijuana card, you must immediately turn it over to probation.

Within 72 hours of your release from custody of the BOP, you shall report in person to the probation office in the district in which you are released. There will be no probation, no fine, no restitution and a special assessment of $100. That is the judgment and order of this Court.

Mr. Cox, you may be seated. Okay, Mr. Cox, I'm going to make one last observation. You objected to the enhancements in the presentence report for possessing a dangerous weapon, maintaining a drug premises and being a leader, organizer. The Court overruled these objections and your guideline range remained at 135 to 168. I granted a variance down to 120 to 135, and you were sentenced to 120 months.

The Court believes a sentence within this range is appropriate in this case regardless of whether objections were granted or denied. Accordingly, the Court's rulings on the defendant's objections have no affect on your ultimate sentence.

Mr. Cox, I need to tell you about your appeal rights. You have the right to appeal this sentence, and if you do decide you want to appeal,

you must do so within 14 days of the entry of the judgment in this case which will be in the next day or two.  So you've got 14 days from judgment to appeal.

Motions on behalf of the government, Mr. Jones?

MR. JONES:  Yes, Your Honor.  I've got to remember the count numbers.

THE COURT:  I think it's one and three.

MR. JONES:  I probably apologize, Judge.

THE COURT:  That's all right.

MR. JONES:  Your Honor, at this time, based on the Court's sentence pronounced on count two, the United States moves to dismiss counts one and three of the indictment as they pertain to Mr. Cox.

THE COURT:  So granted.  Mr. Cox, those two other charges are no longer pending against you.

MR. WYNN:  Your Honor, the defense would like to respectfully move this Court to allow Mr. Cox to remain on release, to self surrender to a BOP facility.  This is based on his continued compliance with all conditions of his supervised release as well as his ability to prove to this Court that he could get from Atlanta, Georgia, to

Jodi Wade, CCR

Arkansas on three separate occasions even when at 5:30 Eastern p.m. yesterday he found out that his flight was delayed and still managed to drive throughout the night.

We do thank the Court again for allowing his case to be held later this morning to allow him the opportunity to get here, but I believe that he has fully demonstrated that he can be trusted by this Court to turn himself in and avoid further punishment, Your Honor.  Thank you.

THE COURT:  Okay.

MR. JONES:  Your Honor, in consideration of Mr. Cox's compliance and as Mr. Wynn pointed out his being here this morning despite flight issues, we'll defer to the Court on that question.

THE COURT:  Okay.  Normally, Mr. Cox, under the statute, you should go into custody.  But you have -- I've gotten a report from the probation office, and they have indicated you have complied with all of your conditions.  You have been in court every time, despite the weather, and so I'm going to allow you to remain out on bond, okay.

THE DEFENDANT:  Thank you.

THE COURT:  You're welcome.  Mr. Cox, you'll have to continue to comply with all of those

Jodi Wade, CCR

conditions, okay.

THE DEFENDANT: Of course. Yes, ma'am.

THE COURT: If you don't and they tell me you don't, I'm going to have to take you into custody, and I don't want to take you into custody, okay.

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Also, I have recommended that you be housed close to Atlanta. That's just a recommendation. I can't decide -- the BOP decides what they want to do. And so they do consider my recommendation, but they will ultimately make that decision. So it'll be very important for you to appear at the facility that you're designated to. It may be in Atlanta. It may be someplace else.

But, obviously, you have shown that you can do that. Your report date is going to be May 14th of 2025. And so Mr. Wynn or your probation officer, someone will tell you where you need to -- what facility you need to be at on that May 14th day. Okay? Okay.

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay, anything further from the government?

Jodi Wade, CCR

MR. JONES:  No, Your Honor.

THE COURT:  Anything further from the defense?

MR. WYNN:  No, Your Honor.

THE COURT:  Okay.  Mr. Cox, I wish you good luck.  I truly do.  I hope that this is a bump in the road for you and that you can return to your family and your home in Atlanta once this is over, and you can live a long and productive life.  I wish you good luck, Mr. Cox.

THE DEFENDANT:  I thank you for that.

THE COURT:  You're welcome.  Court is adjourned, ladies and gentlemen.

[Court adjourned at 1:26 p.m.]

Jodi Wade, CCR

                    C E R T I F I C A T E


        I, Jodi T. Wade, an Official Court

Reporter for the United States District Court,

Western District of Arkansas do hereby certify that

the foregoing is a transcript of proceedings which

occurred at the time and place herein designated,

consisting of 47 pages which was recorded by a

court-approved electronic sound recording means and

then transcribed via a computer personally by me or

under my supervision, and this transcript is a true,

correct and complete transcript of said proceedings

as reflected herein to the best of my ability after

listening and transcribing said sound recording.

        Signed this 10th day of May, 2025, in the

City of Hot Springs, County of Garland, State of

Arkansas.




                            /S/ Jodi T. Wade

                              Jodi T. Wade, CCR
                            Official Court Reporter
                             U.S. District Courts
                          Western District of Arkansas




                        Jodi Wade, CCR